**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA |
| v. |
| STEPHON JAMAL DAVIS, et al., |
| Defendants. |

Criminal Action No. 19-292 (JDB)

## MEMORANDUM OPINION

Before this Court are five defendants' appeals of Magistrate Judge Meriweather's pretrial detention determinations in this multidefendant drug conspiracy case. The Court considers each defendant's appeal individually, but given the nature of the charges, the Court presents its findings of fact and statement of reasons with respect to each defendant in a single memorandum opinion. For the reasons below, the Court finds that, based on the facts presented to the Court at this time, each of the five defendants—Stephon Jamal Davis, Larry Key, Ronald Mathews, Darren Piles, and Reginald Maurice Sutton—shall be detained without bail pending trial, affirming Magistrate Judge Meriweather's initial determinations.

## BACKGROUND & FINDINGS

On September 4, 2019, the government charged eight defendants with conspiracy to distribute and to possess with intent to distribute cocaine base, or "crack" cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Indictment [ECF No. 1] at 1. The indictment also charges Davis and Key with offense conduct involving 280 grams or more of cocaine base in violation of § 841(b)(1)(A)(iii); Mathews and Piles with offense conduct involving 28 grams or more of cocaine base in violation of § 841(b)(1)(B)(iii); and Sutton with offense conduct involving a detectable amount of cocaine base in violation of § 841(b)(1)(C). Indictment at 2.

At the hearing and in the briefs before this Court, the government proceeded by way of proffer. Based on that proffer, the Court finds that in July 2018, law enforcement began investigating Larry Key and Stephon Davis for drug trafficking. Gov't's Mem. for Pretrial Detention Re Davis [ECF No. 12] at 3.[1] The investigation included the authorized interception of wire communications to and from Key's phone and to and from Davis's phone. Id. at 4. During the interceptions, there were 94 pertinent calls between Key and Davis, and Key met with Davis to obtain narcotics from him on approximately 35 occasions, obtaining up to an ounce of crack cocaine at a time. Id. at 15. In the recorded communications, Key and Davis use coded language to make the drug transactions. Id. at 15–17.

The FBI also made eight controlled purchases of narcotics in its investigation, two of which involved Davis. Id. at 4. The telephone conversations setting up the narcotics transactions were recorded, the cooperating witness was equipped with audio recording equipment, and law enforcement agents observed the cooperating witness conduct the drug transactions. Id. In two of the controlled purchases, Davis sold narcotics to the cooperating witness through Key, id. at 5–8, and on multiple occasions, Key directly sold narcotics to the cooperating witness, Gov't's Mem. for Pretrial Detention Re Key [ECF No. 33] at 11.

The government further proffers that Mathews operated a stash house at Davis's direction. Gov't's Mem. for Pretrial Detention Re Davis at 10. There were 142 pertinent communications between Davis and Mathews during the wiretap. Id. In these communications, Davis frequently called Mathews to tell him to fill various drug orders. Id. at 10–15. For example, in an intercept on May 21, 2019, Davis received a call from a James Hamlin asking to get "maybe something like

---

[1] The Court primarily cites to the government's memorandum for pretrial detention of Davis because it describes communications between Davis and each of the other defendants. The memoranda on the other defendants includes the same descriptions verbatim, but only includes the descriptions relevant to the defendant at issue. In other words, the government's memorandum for pretrial detention of Davis is the most inclusive statement of the facts.

two grams from you." Id. at 10–11. Davis directs Hamlin to "[g]o to the building" and asks him "How much you got?" Id. at 11. Hamlin responds, "I got like 140." Id. Davis tells him "Alright, I'll do something right quick" and then immediately calls Mathews, saying "Hey cuz, put a 1-8 together out of my bag." Id. Mathews replies, "Ok." Id. Davis later clarifies "Yeah 1-8, he's gonna give you 140. He's always, just play it off. Just crunch it up or something, make it look like a lot." Id. The government explains that because Hamlin only had $140, Davis directed Mathews to give Hamlin only 1.8 grams of cocaine base.

The intercepts also include many conversations between Davis and Piles, in which the defendants use coded language to conduct drug transactions. The government proffers that Davis supplied Piles with 3.5 grams of cocaine base every few days. Id. at 9. For example, in an intercept on May 22, 2019, Piles tells Davis, "I'm about to pull up." Id. Davis asks, "Hey what you was trying to do, same old same old?" Id. at 9–10. Piles replies "I got 1-5," which, according to the government, means that Piles is trying to purchase $150 worth of crack cocaine. Id. Davis says "Alright." Id. The very next day, Piles calls Davis. Id. Davis again asks "What you trying to do?" and Piles replies "I got 2," which the government interprets as Piles trying to obtain $200 worth of crack cocaine. Id. At the hearing held on September 19, 2019, the government further proffered that such a pattern of purchases is consistent with purchasing drugs for distribution—not personal use. Some of the transactions between Davis and Piles are also corroborated by surveillance. See id. at 9.

Finally, the intercepts captured at least two instances where Sutton purchased approximately half an ounce of cocaine base from Davis. Id. at 18–19. For example, on August 15, 2019, Sutton texted Davis, "Brother. 650 for 14g." Id. at 18. Davis responded, "Can't," to which Sutton replied, "I don't want no trouble man whatever you say it is." Id. Later that day,

Sutton called Davis telling him he was outside, and Davis said "Come in." Id. The government proffers that the quantities purchased by Sutton are consistent only with mid-level narcotics distribution. Gov't's Mem. for Pretrial Detention Re Sutton at 3 [ECF No. 13] at 10.[2]

## **LEGAL STANDARD**

A magistrate judge's detention order is subject to de novo review by the district court. See United States v. Taylor, 289 F. Supp. 3d 55, 63 (D.D.C. 2018); United States v. Hunt, 240 F. Supp. 3d 128, 132–33 (D.D.C. 2017) (citing cases). The court shall order that a defendant be detained prior to trial if the court finds, after conducting a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The government bears the burden of proving "by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person." United States v. Salerno, 481 U.S. 739, 750 (1987). Detention need only be supported by a "preponderance of the evidence" if the justification for pretrial detention is the risk of flight. United States v. Simpkins, 826 F.2d 94, 96 (D.C. Cir. 1987).

If the court finds there is probable cause to believe that the defendant committed a drug offense in violation of the Controlled Substances Act for which a maximum penalty of ten years imprisonment or more is prescribed, the court must presume, subject to rebuttal by the defendant, that no combination of conditions upon the defendant's release would reasonably assure the safety of the community and the appearance of the defendant as required. 18 U.S.C. § 3142(e)(3)(A). For purposes of making that determination, "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." United

---

[2] The Court does not recount the proffered facts regarding the three other defendants in this case, including Lemar Dielo Kinnard and Warren Boyd, who have not appealed their pretrial detention determinations, and Elgin Thomas Hoggard, who Magistrate Judge Meriweather released pending trial.

States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010); see also United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("[T]he indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community."). Once triggered, "the presumption operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985).

In determining whether any release conditions can reasonably assure the appearance of the defendant as required and the safety of the community, the court considers: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves . . . a controlled substance"; (2) "the weight of the evidence against the person"; (3) various personal information including character, employment, and criminal history; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

## ANALYSIS

All five defendants are subject to the rebuttable presumption of detention because all crack cocaine distribution offenses in violation of 21 U.S.C. § 841(a)(1)—no matter the amount of cocaine base involved—are subjected to statutory maximums above ten years' imprisonment. See id. §§ 841(b)(1)(A)(iii), 841(b)(1)(B)(iii), 841(b)(1)(C). With respect to each defendant, the Court has considered the relevant law, the facts presented in the indictment, Magistrate Judge Meriweather's detention orders, the memoranda submitted by the government and defendants, evidence presented at hearings and provided as exhibits, the information provided by the Pretrial Services Agency, and the statements and arguments orally made by counsel. After consideration

of all the factors set forth in 18 U.S.C. § 3142(g), with respect to each defendant individually, the Court orders that Davis, Key, Mathews, Piles, and Sutton remain detained prior to the trial.

### 1. Stephon Jamal Davis

As to Davis, the first factor, the nature and circumstances of the charged offense, strongly favors detention. Davis is the lead defendant of the eight-person conspiracy. He is charged with trafficking narcotics on a daily basis, ordering others to traffic narcotics on his behalf, and operating multiple stash houses where he manufactured, stored, and sold cocaine base. Davis is charged with offense conduct involving 280 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii), which provides a mandatory minimum sentence of ten years' imprisonment. It is a serious offense that favors pretrial detention.

The weight of the evidence against Davis is strong and favors detention. The government intercepted coded wire communications to and from Davis's phone that—the government claims—are about trafficking and "cooking" cocaine base. The government also conducted two controlled narcotics purchases with Davis using a cooperating witness, though Davis never made a direct hand-to-hand sale of narcotics with the cooperating witness. Finally, Davis was frequently observed by law enforcement at one of the stash houses.

The third factor, concerning Davis's history and personal characteristics favors neither detention nor release. Davis is a 28-year-old life-long D.C. resident with significant family ties to the area. Davis's Mot. for Reconsideration [ECF No. 52] at 3. He has only one prior conviction from 2016, which is not a narcotics offense, and he has no history of violating conditions of supervised release. See Davis Pretrial Services Report [ECF No. 2] at 1–3.

The fourth factor—whether release of Davis poses a danger to the community—favors detention. Davis is accused of being responsible for the widespread distribution of a significant

amount of cocaine base throughout the Metropolitan area, which presents a danger to the community. He is also—by the government's account—the ringleader of the alleged drug trafficking conspiracy. The Court therefore finds that no condition of release, including home detention through the High Intensity Supervision Program, could sufficiently assure the safety of the community.

### 2. Larry Key

The nature and circumstances of Key's offense strongly favor detention. Like Davis, Key is charged with distributing or possessing with intent to distribute 280 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii), an offense that carries a mandatory minimum sentence of ten years' imprisonment. This suggests that Key—if convicted— would face a lengthy sentence. Key started obtaining narcotics from Davis in November 2018 and met with him almost daily over the course of four months, obtaining up to an ounce (28 grams) of cocaine at a time. Additionally, in a separate case, Key is charged with two counts of unlawful distribution of heroin and two counts of unlawful distribution of fentanyl. See United States v. Key, No. 19-291 (D.D.C. Sept. 4, 2019). These are serious offenses that weigh in favor of detention.

The weight of the evidence against Key is very strong. The FBI, using a cooperating witness, made multiple controlled purchases of narcotics directly with Key. According to the government, Key is heard using coded language to make drug transactions on numerous intercepts—both on Key's target line and Davis's target line. Finally, when Key's residence was searched, the police found drug paraphernalia, including a digital scale and a plastic bag with small zip bags inside. Thus, the weight of the evidence favors detention.

The third factor, assessing Key's history and personal characteristics, slightly favors release. Key has close family ties to the D.C. area and could reside with his sister if released pretrial. He is 57 years old, and while he does have a serious criminal record, that record is nearly 30 years old. See Key Pretrial Services Report [ECF No. 3] at 1–5. In the last 28 years, Key has not been charged or convicted of any criminal activity. Id. However, the government alleged at the hearing that Key's recent criminal activity went on for over a year, and that when Key's supply of heroin and fentanyl ran out, Key switched to trafficking crack cocaine.

Finally, the Court finds that, if released, Key would pose a danger to the community given the charges of widespread distribution of cocaine base and the trafficking of different types of narcotics over the course of the past year. Given the seriousness of the offenses, the weight of the evidence against Key, and the danger posed to the community by the widespread distribution of crack cocaine as well as the distribution of heroin and fentanyl, the Court finds that no release conditions can reasonably assure the safety of the community.

### 3. Ronald Mathews

With respect to Mathews, the Court finds that the four factors, based on the record at this time, narrowly favor detention. First, the nature of Mathews's offense is serious. According to the government's brief, Mathews helped operate one of the stash houses and frequently trafficked cocaine base at Davis's direction. Mathews is charged with distributing more than 28 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), which means that he could be subjected to a five-year mandatory minimum. This factor favors detention.

The weight of the evidence against Mathews is also somewhat strong. There are numerous intercepts corroborated by surveillance indicating that Mathews was aiding Davis in narcotics

transactions. There are, however, no narcotics transactions between Mathews and the cooperating witness. This factor favors detention.

The third factor favors release. Mathews is a 57 year-old life-long resident of the Washington, D.C. area. He suffers from a serious health condition and is a patient in an important health study being conducted by the National Institutes of Health. Mathews's Mot. for Reconsideration of Conditions of Release [ECF No. 56] at 4. He also receives a housing voucher under a special program, and he risks losing—or may have already lost—his home for failure to renew that voucher. Id. Mathews does have a criminal history of narcotics offenses and violating conditions of release, but those offenses occurred over sixteen years ago. See Mathews Pretrial Services Report [ECF No. 4] at 2–5. In the last sixteen years, Mathews has only been charged with driving with a suspended or revoked license in 2008 and driving under the influence in 2003. Id. Given Mathews's health conditions and relatively old criminal history, this factor favors release.

Finally, the fourth factor, regarding the danger that release poses to the community, favors detention. While Mathews primarily acted under Davis's direction, Mathews struggles with addiction and may find another source of crack cocaine to traffic if released before the trial. The Court finds it particularly troubling that, if released, Mathews' only housing option is his apartment, which was allegedly one of the stash houses in the drug conspiracy. Because there is a real risk that Mathews would continue to traffic narcotics from his apartment, the Court finds that there are no release conditions available at this time that can assure the safety of the community.

### 4. Darren Piles

The nature of Piles's offense is serious and favors detention. Piles is charged with distributing 28 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(B)(iii). According to the government, Piles obtained approximately 3.5 grams of cocaine base from Davis every few days and that amount—and pattern of purchases—is consistent with purchasing crack cocaine for distribution. The Court finds, both on the government's proffer as well as the existence of the indictment, that there is probable cause that Piles distributed—or possessed with intent to distribute—28 grams or more of cocaine base.

The evidence against Piles is not particularly strong, but there are many intercepts that support the government's allegation that Piles purchased 3.5 grams of cocaine base from Davis on many occasions. The additional evidence, including the fact that the police found a small bag of crack cocaine in his home and that there was a K9 alert to the presence of narcotics in a car used by Piles but not yet searched, does not strongly indicate that Piles was distributing—as opposed to merely using—crack cocaine. Ultimately, this factor only slightly favors detention.

Next, the Court considers the personal characteristics of Piles, including his criminal history. Piles has lived in the D.C. metropolitan area his entire life and has close family ties to the area, including a six-month-old child who lives with him and his mother. Piles's Appeal of Magistrate Judge's Order of Detention [ECF No. 55] ¶ 18. However, Piles—at just 28 years old— has a significant criminal history, which includes narcotics offenses. See Piles Pretrial Services Report [ECF No. 5] at 1–4. Piles has three prior convictions, including for possession of stolen property, possession of a controlled dangerous substance, and second-degree assault. Id. He also has a charge for possession of a controlled dangerous substance (not marijuana) from December 2018 on Maryland's STET docket pending Piles's completion of a drug treatment program. Thus, this factor modestly favors detention.

Finally, the Court finds that release of Piles poses a danger to the community because the alleged offense involves the distribution of a highly dangerous narcotic throughout the community.

Considering all the factors, particularly Piles's criminal history and the presumption of dangerousness triggered by Piles's offense, the Court finds that no release conditions could reasonably assure the safety of the community and that the pretrial detention of Piles is appropriate.

### 5. Reginald Maurice Sutton

Sutton is the only defendant detained pretrial who is charged only with distributing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Still, that offense carries a statutory maximum of 20 years and thus triggers the rebuttable presumption of pretrial detention. Further, the government proffers that Sutton's actual offense conduct involved approximately 12 grams of cocaine base on one occasion and 14 grams on another occasion. The nature of the offense favors detention.

The weight of the evidence against Sutton is not particularly strong, though it is also not particularly weak. There are intercepted wire communications that—according to the government—reflect Sutton purchasing 12–14 grams of cocaine base from Davis on two separate occasions, and the government proffers that this amount is indicative of mid-level narcotics distribution. These intercepts are not, however, corroborated by surveillance, and when Sutton's home was searched, law enforcement recovered a dropper of suspected PCP and a digital scale, but no crack cocaine. See Gov't's Mem. for Pretrial Detention Re Sutton [ECF No. 13] at 10; Sutton's Mot. to Amend Pretrial Detention Order [ECF No. 54] at 5; Gov't's Mem. for Pretrial Detention Re Davis at 3. This factor is, therefore, neutral.

With respect to Sutton's personal characteristics, he is 47 year-old lifelong resident of Washington, D.C. and suffers from very poor health. Id. at 4. His condition requires that he receive daily injections of insulin. Id. His leg is also injured, and he's been warned that he is at

risk of amputation of the limb.  Id.  On these facts alone, the Court would lean towards ordering

that Sutton be released.

However, Sutton's criminal history—and particularly his demonstrated failure to comply

with supervised release conditions—ultimately tips the scales in favor of detention.  Sutton was

on probation for a possession of controlled substances (not marijuana) offense at the time he was

arrested for the instant offense, and he has four prior convictions related to controlled substances

since 2003.  See Sutton Pretrial Services Report [ECF No. 7] at 2–5.  Further, Sutton has a history

of violating the terms of his supervised release and having his supervised release revoked.  See id.

at 3–4.  Therefore, ultimately, the third factor strongly favors detention.

The fourth factor also favors detention, primarily because Sutton is charged with conduct

that poses a danger to the community, and his criminal history demonstrates that there is a real risk

that, if released, he will continue to distribute narcotics into the community or otherwise violate

the conditions of supervised release.  Thus, the Court finds that there are no release conditions that

could assure Sutton would not pose a danger to the community while awaiting trial, and he should

remain detained.

## CONCLUSION

Accordingly, based on the findings of fact and reasons provided in this memorandum

opinion, defendants' appeals of their detention orders are denied and defendants shall remain in

the custody of the Attorney General for confinement pending a final disposition in this case.

Separate orders consistent with this Memorandum Opinion and in accord with 18 U.S.C. § 3142(i)

will be entered contemporaneously.

/s/
_____
JOHN D. BATES
United States District Judge

Dated:  October 1, 2019