UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>STEPHON JAMAL DAVIS,<br>Defendant. | Crim. No. 19-292-1 (JDB) |

### MEMORANDUM OPINION & ORDER

Defendant Stephon Jamal Davis has moved for release from detention in light of the global COVID-19 pandemic. See Emergency Mot. for Placement in High Intensity Supervision Program of 'At Risk' Detained Def. ("Release Mot.") [ECF No. 133] at 1. For the reasons set forth below, the motion is **GRANTED** and the defendant shall be temporarily **RELEASED** at 9:00am on April 7, 2020.

### BACKGROUND

On September 4, 2019, defendant was indicted on a single count of Conspiracy to Distribute and Possess with Intent to Distribute 280 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii). Indict. [ECF No. 1]. He was arrested the following day, and Magistrate Judge Meriweather ordered that he be detained without bond pending disposition. See Order of Detention [ECF No. 60]. Davis appealed that detention order. See Davis's Opp'n to Gov't's Mem. for Pretrial Detention & Mot. for Reconsideration [ECF No. 52]. This Court denied his appeal, concluding that Davis should remain in the custody of the Attorney General pending trial. See Oct. 1, 2019 Order [ECF No. 81].

In denying Davis's appeal, this Court noted that the rebuttable presumption of pretrial detention applied and that both the nature of the underlying offense, which carries a mandatory

1

minimum sentence of ten years' imprisonment, as well as the weight of the evidence, favor detention. See Oct. 1, 2019 Mem. Op. [ECF No. 80] at 6. The Court found that Davis's history and personal characteristics favored neither detention nor release, as he had only one prior conviction that was not a narcotics offense and he had no history of violating conditions of supervised release. Id. In consideration of the rebuttable presumption and all the factors under 18 U.S.C. § 3142(g), the Court concluded that "no condition of release . . . could sufficiently assure the safety of the community" and thus denied Davis's appeal of his detention order. Id. at 6–7.

Since that denial, the virus COVID-19 has spread around the world, with the World Health Organization declaring it to be a global pandemic. See Release Mot. at 2. Last week, there were more than a dozen reported COVID-19 cases in the D.C. Jail where defendant is currently detained. See Standing Order No. 20-17 (BAH) ¶ 5 (March 30, 2020); Suppl. to Emergency Mot. for Placement in High Intensity Supervision Program of 'At Risk' Detained Def. ("Suppl. to Release Mot.") [ECF No. 155] ¶ 1. On April 6, 2020, the Court was informed that twenty inmates at the D.C. Jail have now tested positive. There is also a pending class action lawsuit against the D.C. Department of Corrections, brought by the ACLU and Public Defender Service for the District of Columbia, alleging that the D.C. Department of Corrections has failed to distribute sufficient hygienic products and provide prompt medical attention and testing to those with COVID-19 symptoms, and that consequently, experts predict that COVID-19 will "spread like wildfire" in DOC facilities. Id. ¶ 2.

Davis is 28 years old and entered the D.C. Jail with no reported health conditions. See Pretrial Services Report [ECF No. 2] at 1–2. However, Davis is currently suffering from acute bronchitis and taking five medications, including albuterol and prednisone, a corticosteroid that is an anti-inflammatory and immunosuppressant. Id. ¶ 3; Ex. 1 to Suppl. to Release Mot. ("Davis's

Medical Chart") [ECF No. 155-1] at 1.  Davis's medical chart from the Central Detention Facility confirms he was diagnosed with acute bronchitis and prescribed these medications on March 24, 2020.  See Davis's Medical Chart at 1.  Davis states that he continues to have trouble with his breathing.  Suppl. to Release Mot. ¶ 3.

Davis now moves for release from the D.C. Jail and placement in the High Intensity Supervision Program, arguing that the health risk to him from COVID-19 is greatly heightened due to his current medical condition, including acute bronchitis and a severe sinus infection.  Release Mot. at 1.  The government opposes the motion for release.  See Gov't's Opp'n to Def.'s Request for Review of Order of Detention [ECF No. 137]; Gov't's Suppl. Opp'n [ECF No. 147].

## ANALYSIS

Davis seeks release under 18 U.S.C. § 3142(i), which provides that a "judicial officer may . . . permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."  18 U.S.C. § 3142(i).  Until now, the few courts that have ordered temporary release on the basis of "another compelling reason" have done so only "sparingly," typically in order "to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries."  United States v. Lee, No. 19-cr-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quotation omitted).  The defendant bears the burden of demonstrating that his temporary release is necessary for compelling reasons under § 3142(i).  See United States v. Stephens, No. 15-cr-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020).

Courts have routinely denied emergency motions for release based on the generalized threat of COVID-19 when the underlying offense is serious and there is no unique, heightened risk

3

to the particular defendant.  See Lee, 2020 WL 1541049, at *6 (citing cases).  And even where a defendant does face a heightened risk, that is not the end of the analysis.  Courts still take into account other factors, including "the original grounds for the defendant's pretrial detention," "the proposed release plan," and "COVID-19 risks to others."  See United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); see also United States v. Boatwright, No. 219-cr-00301GMNDJA, 2020 WL 1639855, at *5–8 (D. Nev. Apr. 2, 2020); United States v. Dodd, No. 20-cr-0016 (NEB/HB), 2020 WL 1547419, at *3 (D. Minn. Apr. 1, 2020).

Davis is currently suffering from acute bronchitis and having trouble breathing.  Suppl. to Release Mot. ¶ 3; Davis's Medical Chart at 1.  The CDC has recognized that people of all ages with underlying medical conditions, particularly those with moderate asthma and those with prolonged use of corticosteroids and other immune weakening medications, are at a heightened risk of severe illness from COVID-19.  See Centers for Disease Control & Prevention, Groups at Higher Risk for Severe Illness, available at https://tinyurl.com/w4yd732.  Based on this CDC guidance, and given that Davis is suffering from bronchitis (itself a serious respiratory condition) and that he is taking prednisone (an immunosuppressant corticosteroid), the Court concludes that he is likely at a higher risk of severe illness from COVID-19.  See Suppl. to Release Mot. ¶ 3; Davis's Medical Chart at 1; see also United States v. Davis, No. ELH-20-09, 2020 WL 1529158, at *4 (D. Md. Mar. 30, 2020) (finding defendant who "reported to Pretrial Services two months ago that he was in excellent health," but "reports today that he has bronchitis," is at a higher "risk for greater harm if exposed" to the virus).

The Court takes Davis's heightened risk of suffering severe illness from COVID-19 particularly seriously given the rapidly escalating number of inmates who have tested positive for

COVID-19 in the D.C. Jail. On March 30th, there were four inmates at the D.C. Jail who had tested positive for COVID-19. See Standing Order No. 20-17 at 2 (citing *2 More Inmates in D.C. Jail Test Positive for COVID-19*, https://tinyurl.com/wzn2dgm (last visited March 29, 2020)). A week later, there are now at least twenty inmates who have tested positive. This escalating number of positive cases is a grave concern that weighs heavily on the Court's determination; it makes the threat to Davis's health from COVID-19 both real and imminent. See Basank v. Decker, No. 20 Civ. 2518 (AT), 2020 WL 1481503, at *5 (S.D.N.Y. Mar. 26, 2020) (noting "spread of COVID-19 is measured in a matter of a single day—not weeks, months, or years—and . . . this condition of confinement . . . will likely cause imminent, life-threatening illness").

And the threat is not just to Davis. "[T]he risk of overburdening the jail's healthcare resources, and the healthcare resources of the surrounding community is real." United States v. Harris, No. CR 19-356, 2020 WL 1482342, at *1 (D.D.C. Mar. 26, 2020). If Davis contracts the virus while suffering from acute bronchitis, he will likely require significant medical resources and attention, and even if he does not contract the virus, he is at minimum another inmate requiring medical treatment for respiratory problems at the D.C. Jail. If the virus continues to spread, decreasing the number of people in the D.C. Jail and lessening the burden on the jail's limited healthcare resources will be crucial to protecting all inmates and staff at the D.C. Jail as well as people in the surrounding community. See Basank, 2020 WL 1481503, at *3 (gathering "[s]everal recent court rulings" that "explain[] the health risks—to inmates, guards, and the community at large—created by large prison populations"); see also March 21, 2020 Statement, Board of Correction, City of New York, at 1, available at https://tinyurl.com/wlmo38g (advising, in context of the COVID-19 outbreak in New York City jails, that "[f]ewer people in the jails will save lives and minimize transmission among people in custody as well as staff" and that "[f]ailure to

drastically reduce the jail population threatens to overwhelm the City jails' healthcare system as well [as] its basic operations").

Although there are strong reasons for Davis's temporary release, the Court must still consider whether the defendant "has presented such compelling reasons that effectively override or at least sufficiently counterbalance the findings that originally justified the pretrial detention order." Boatwright, 2020 WL 1639855, at *5. Here, Davis is facing a ten-year mandatory minimum and is credibly accused of being the ringleader of a crack cocaine trafficking conspiracy. See Gov't's Suppl. Opp'n at 2. Such facts weigh heavily in favor of detention. However, courts have sometimes released defendants with heightened risk of serious illness from COVID-19 even when they have been charged with (or have pled guilty to) serious offenses. See, e.g., Harris, No. 19-cr-356, 2020 WL 1482342, at *1 (granting emergency motion to release to home confinement defendant who pleaded guilty to distribution of child pornography and faces a mandatory minimum sentence of 5 years); United States v. Jaffee, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (minute order granting motion to release to home confinement defendant charged with marijuana distribution, felon in possession, and use of a gun in furtherance of a drug crime after noting evidence adduced so far did not support the third charge).

For example, in United States v. Ramos, the court released a defendant charged with conspiracy to distribute and to possess with intent to distribute more than 500 grams of cocaine in light of the COVID-19 pandemic because the defendant suffered from asthma and diabetes, for which he was treated with albuterol and steroids. See No. 18-CR-30009-FDS, 2020 WL 1478307, at *1 (D. Mass. Mar. 26, 2020). In that case, the health risk was lower than it is here because the facility where the defendant was being held had no reported cases of COVID-19. Id. Still, the court found that the increased risk of exposure to the virus caused by incarceration, in addition to

6

the defendant's underlying medical conditions, warranted release. The court reasoned that the defendant could not "travel without a significant risk of exposure to the virus with the potentially severe health consequences that would follow, and therefore cannot readily flee the district." Id. at *2. Likewise, the court reasoned that attempting to distribute controlled substances at this time would "likely require in-person contact with other individuals who may very well be contagious." Id.

After careful consideration, this Court concludes that, despite the serious charge Davis faces, the compelling reasons for Davis's release to home incarceration counterbalance the findings that originally justified his pretrial detention. The government does not allege in the indictment or in any proffer that Davis engaged in any violent conduct as part of the drug trafficking conspiracy. Additionally, Davis has a limited criminal history. He has one prior conviction for Conspiracy to Commit 2nd Degree Burglary, but much of his sentence was suspended, and he successfully completed his period of probation. Order of Detention at 4. Davis is also unlikely to pose a threat to others if released because he will be subject to home incarceration and electronic monitoring in Laurel, Maryland, where a stay-at-home order is in effect. See Order of the Governor of the State of Maryland, March 30, 2020, available at https://tinyurl.com/w6vprfm.

## CONCLUSION

Given that Davis's acute bronchitis puts him at high risk of serious illness from COVID-19 if he remains detained, the D.C. Jail has limited healthcare resources and is already battling to contain the spread of the virus with twenty reported cases thus far, and Davis is charged with a serious but nonviolent offense and has a limited criminal history, the Court concludes that there is a compelling reason to require Davis's immediate release to home confinement under § 3142(i).

Accordingly, it is hereby

**ORDERED** defendant's [133] emergency motion for release under § 3142(i) is **GRANTED** and he shall be temporarily **RELEASED** at 9:00am on April 7, 2020; it is further

**ORDERED** that the defendant shall (1) report to pretrial services immediately upon release on April 7, 2020 to be placed on electronic monitoring in the High Intensity Supervision Program and (2) abide by all conditions set out in the Court's separate Order Setting Conditions of Release; it is further

**ORDERED** that any violation of this Order by the defendant may be treated as criminal contempt; it is further

**ORDERED** that when the Court determines that there are no longer compelling reasons for defendant's temporary release pending disposition of this case under 18 U.S.C. § 3142(i), the defendant shall return to the custody of the United States; and it is further

**ORDERED** that the defendant shall appear at a status conference on June 15, 2020, in Courtroom 30A at 9:30am.

**SO ORDERED.**

JOHN D. BATES<br>
United States District Judge

Dated: <u>April 6, 2020</u>